UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DARREN MACK,

                Petitioner,

    -against-                             **MEMORANDUM & ORDER**
                                                      16-CV-4050 (PKC)

B. McAULIFFE, Superintendent,
Riverview Correctional Facility, and ERIC T.
SCHNEIDERMAN, Attorney General of the
State of New York,

                Respondents.
----------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

        Petitioner Darren Mack ("Petitioner" or "Mack"), appearing *pro se*, petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence entered on February 14, 2013, in the Supreme Court of the State of New York, Kings County. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

**I.    Facts[1]**

        On September 25, 2010, at approximately 3:10 p.m., Harpeet Singh[2], was robbed at the gas station where he worked as an attendant. While he was pumping gas, he was approached by two males, one wearing a white t-shirt and dark jeans and the other wearing a dark shirt. The man in

---

[1] Because of Petitioner's conviction, the Court construes the record in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[2] Singh was referred to as "Harpeet Singh" during the trial and as "Billa Singh" during the suppression hearing.

the white t-shirt appeared to have a handgun.[3]  "[T]hey robbed [Singh] of . . . whatever petty cash he had on him [totaling $563] . . . . And then they took off."  (H. 48-49; T. 33-34.)[4]

Detective Christopher Esposito and Officer Vito Nicoletta of the New York City Police Department ("NYPD") were in an unmarked police car next to the gas station when the robbery occurred.  (H. 11-12, 20.)  Detective Esposito saw two men, one of whom had a firearm and was wearing a white shirt, running from the gas station towards a Chevy Tahoe.  (H. 12.)  A third individual was driving the Tahoe.  The officers pursued the Tahoe in a high speed chase.  (H. 14-15.)  The chase ended about two miles from the gas station when the Tahoe crashed into a marked police car "head on," then "reversed into [Detective Esposito and Officer Nicoletta's] vehicle," "drove up on the sidewalk . . . nearly hitting pedestrians that were standing there, clipped a few parked cars[,] and then flipped over on its side."  (H. 16-17.)  Petitioner and his co-defendant Eugene Hester were arrested when they got out of the overturned car.  (H. 18-19, 25.)  The driver, later identified as co-defendant Michael Chirse, fled the scene and was arrested three months later.  (H. 18.)

Approximately twenty to twenty-five minutes after the robbery, NYPD Detective Christopher Castrogiovanni was asked to bring Singh to the scene of the arrests to see "whether he recognized anybody."  (H. 47-49.)  Petitioner and Hester were sitting handcuffed in a marked police car with uniformed police officers nearby.  (H. 78-79.)  The police directed Petitioner and Hester to step out of the car one at a time.  (H. 49-51, 79.)  Singh identified Hester as "the man

---

[3] The object that appeared to be a handgun was later determined to be an air pistol.  (H. 6.)

[4] "H." refers to the transcript of the *Dunaway/Wade* hearing held on March 27, 2012.  (Dkt. 7-1.)  The page numbers refer to the document's internal pagination.  "T." refers to the transcript of Petitioner's trial from November 15, 2012 to November 29, 2012.  (Dkts. 7-3, 7-4, 7-5, 7-6, and 7-7.)

2

with the gun" and when Petitioner stepped out of the car, Singh "identified him as the other guy that was there[.]" (H. 50-51.)

Petitioner was charged, under Kings County Indictment Number 8601/2010, with Robbery in the Second Degree (four counts), Robbery in the Third Degree, Grand Larceny in the Fourth Degree, Petit Larceny, Assault in the Second Degree (four counts), Assault in the Third Degree (two counts), Reckless Endangerment in the First Degree, Reckless Endangerment in the Second Degree, and Criminal Possession of a Weapon in the Fourth Degree.

## II. Suppression Hearing

Before trial, Petitioner moved to suppress Singh's show-up identification, arguing that it was unduly suggestive. Justice John G. Ingram held a *Dunaway/Wade* hearing[5] on March 27, 2012. (Dkt. 7-1.) Detectives Esposito and Castrogiovanni testified to the events described above. Justice Ingram denied the suppression motion at the conclusion of the hearing. (H. 117.)

## III. Trial

Petitioner's trial was held from November 15, 2012 to November 29, 2012 before Justice William E. Garnett of the New York Supreme Court, Kings County. Jury selection began on November 15, 2012. (JS. 56.)[6] The record does not indicate whether the prospective jurors were sworn before questioning began. (JS. 64-79, 154.) However, defense counsel did not object. (JS. 56-237.) Prior to the court's preliminary instructions, the clerk swore in the jury, which was made up of twelve regular jurors and four alternate jurors. (T. 4.)

---

[5] A *Wade* hearing is a "motion to suppress identification." Raheem v. Kelly, 257 F.3d 122, 125 (2d Cir. 2001). A *Dunaway* hearing is "used to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial." *Montgomery v. Wood*, 727 F. Supp. 2d 171, 185–86 (W.D.N.Y. 2010).

[6] "JS" refers to the transcript of jury selection held on November 15, 2012. (Dkt. 7-2.)

3

At trial, Singh testified about the robbery. He was unable to identify Petitioner and Hester at trial because it was "two years [since] it happened" and he "[did]n't know whether [he] would be able to recognize them." (T. 40, 48.) However, he testified about the show-up identification on the day of the robbery and stated that the two people he identified were the ones that robbed him. (T. 38-39.) Singh's boss, Zekria Manely, testified that after Singh told him he had been robbed, Singh, Manely, and other employees chased after Petitioner and Hester, who drove off in a Chevy Tahoe. (T. 35, 58, 60, 68, 370, 380.) Detective Esposito and Officer Nicoletta testified about the subsequent car chase and arrests. Detective Castrogiovanni testified about Singh's show-up identification of Petitioner and Hester. (T. 87-90, 126.) The prosecution also introduced a videotape from the gas station's surveillance camera showing the robbery. (T. 44-45, 377-78.) Petitioner presented no witnesses on his behalf. (T. 608-09.)

On November 29, 2012, the jury found Petitioner guilty of Robbery in the Second Degree. (T. 750.) On February 14, 2013, Petitioner was sentenced to nine years' imprisonment to be followed by five years of post-release supervision. (S. 3-6.)[7] He was released from prison on or about March 9, 2018. (Dkt. 9.)

## IV.  Direct Appeal

Petitioner appealed his conviction to the New York State Appellate Division, Second Department. He argued that his due process rights were violated by: (1) an unduly suggestive show-up identification and (2) the failure of the court to swear in prospective jurors during jury selection as required by New York Criminal Procedure Law § 270.15(1)(a). In the alternative, he

---

[7] "S" refers to the transcript of Petitioner's sentencing held on February 14, 2013. (Dkt. 7-7.)

4

argued that his counsel was ineffective for not objecting to the trial court's failure to administer an oath.

On January 27, 2016, the Appellate Division affirmed Petitioner's conviction. *People v. Mack*, 135 A.D.3d 962 (N.Y. App. Div. 2016). The court found that "the People demonstrated that the showup was reasonable under the circumstances by presenting proof that it was conducted within approximately 25 minutes of the crime and within two miles of the crime scene." *Id.* at 963 (citations omitted). It further found that "the showup was not rendered unduly suggestive because he was handcuffed and in the presence of uniformed police officers and police cars or because it took place in the vicinity of a car crash involving the vehicle used to flee the scene of the crime." *Id*. (citations omitted). The Appellate Division also found Petitioner's claim regarding the trial court's failure to administer the oath to prospective jurors unpreserved for appellate review. *Id.* at 963-64.

The Court of Appeals denied Petitioner's leave to appeal on April 18, 2016. *People v. Mack*, 27 N.Y.3d 1002 (2016).

## V. Instant Petition for Writ of *Habeas Corpus*

Petitioner timely filed the instant *habeas* petition on July 14, 2016. (Dkt. 1.) Respondents responded to the Court's Order to Show Cause on August 18, 2016. (Dkt. 6.)

## STANDARD OF REVIEW

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

5

"A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 411 (2000)). Courts must "assess whether the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Garner v. Lee*, No. 17-78-PR, 2018 WL 5985932, at *11 n.14 (2d Cir. Nov. 15, 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and

conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

Petitioner challenges his sentence on the grounds that his Fifth Amendment due process rights were violated by: (1) an unduly suggestive show-up identification; and (2) the failure of the court to swear in prospective jurors during voir dire.

### I. Show-up Identification

Petitioner argues that the show-up identification was "unnecessarily suggestive" because it occurred while Petitioner "was handcuff[ed] and surrounded by police near the crash site of a multiple-vehicle accident." (Dkt. 1, at 8-11.)

As a general matter, the Second Circuit has held "that identification evidence from showups held in close temporal and geographic proximity to the crime scene may be admitted" and are not unduly suggestive. *Brisco v. Ercole*, 565 F.3d 80, 89 (2d Cir. 2009); *see also United States v. Bautista,* 23 F.3d 726, 731 (2d Cir. 1994); *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972). Petitioner himself admits that the show-up identification was "prompt" and "near the scene." (Dkt. 1, at 8.) This alone provides a sufficient basis to deny Petitioner's request for *habeas* relief.

Second, as the Second Circuit has held, "[t]he fact that the suspects were handcuffed, in the custody of law enforcement officers . . . [does] not render the pre-trial identification procedure unnecessarily suggestive. In this case, handcuffs [and] custody . . . were all necessary incidents of an on-the-scene identification." *Bautista*, 23 F.3d at 730; *see also Cardova v. LaValley*, 123 F. Supp.3d 387, 395 (E.D.N.Y. 2015); *Kirk v. Burge*, 646 F. Supp.2d 534, 547 (S.D.N.Y. 2009). Under the circumstances of this case, in which Petitioner and Hester were handcuffed after leading

7

the police on a high-speed chase, and Chirse had already fled police custody, the handcuffs and police presence were not unduly suggestive.

Finally, even if Singh's identification was improperly introduced at trial, any error was harmless. "The erroneous introduction of identification evidence is not a structural error." *Wray v. Johnson*, 202 F.3d 515, 525 (2d Cir. 2000). "[W]hile identification testimony is significant evidence, such testimony is still only evidence, and . . . is not a factor that goes to the very heart- the integrity-of the adversary process." *Watkins v. Sowders,* 449 U.S. 341, 348 (1981) (citation and internal quotation marks omitted). Therefore, the erroneous admission of unreliable identification testimony does not warrant relief from the conviction if the error was harmless. *See, e.g., Dunnigan v. Keane,* 137 F.3d 117, 130 (2d Cir.), *cert. denied,* 525 U.S. 840 (1998); *United States v. Concepcion,* 983 F.2d 369, 379 (2d Cir.1992), *cert. denied,* 510 U.S. 856 (1993).

"[T]he strength of the prosecution's case 'is probably the single most critical factor in determining whether error was harmless[.]'" *Wray*, 202 F.3d at 526 (quoting *Latine v. Mann*, 25 F.3d 1162, 1167-68 (2d Cir. 1994)). Singh's description of the robbery was corroborated by Officer Nicoletta, who saw Petitioner and Hester confront Singh and Hester hold a gun to Singh's side. (T. 158-59, 216, 218.) Singh and Manely established that the robbers got into a Chevy Tahoe, and this was corroborated by Officers Nicoletta and Esposito who saw Petitioner and Hester get into the Tahoe and speed away. (T. 35, 161-62, 210, 264-65, 315, 337, 371-72, 383-84.) Officers Nicoletta and Esposito pursued the Tahoe from the gas station until the getaway car flipped over onto its side, about two miles away. (T. 160-85, 207, 235, 243-47, 265-70, 331-32, 335.) The officers arrested Petitioner and Hester when they emerged from the getaway car and never lost sight of the Tahoe during the police chase. (T. 174-78, 181, 191, 313, 334.) Given that the testimony about the show-up identification "was cumulative, . . . the presence . . . of evidence

corroborating . . . the testimony, and the overall strength of the prosecution's case," any error in admitting the identification was harmless. *Latine*, 25 F.3d at 1167.

**II.     Voir Dire**

Petitioner argues that the trial court's failure to swear in prospective jurors during voir dire violated his due process rights. (Dkt 1, at 12-14.) Even assuming *arguendo* that Petitioner's claim is not procedurally barred, Petitioner's claim fails. That the jurors were not sworn, in "violation of state law"—in this case, New York Criminal Procedure Law § 270.15(1)(a)—"without more . . . does not entitle Petitioner to federal habeas corpus relief." *Booker v. LaValley*, No. 10-CV-1105 (RGK), 2013 WL 528573, at *9 (N.D.N.Y. Feb. 11, 2013); *see also Gaskin v. Graham,* No. 08-CV-1124 (JFB), 2009 WL 5214498, at *27, n. 9 (E.D.N.Y. Dec. 30, 2009) (any violation of CPL § 270.15(1)(a) regarding the administration of juror oaths is a violation of state law for which a petitioner would not be entitled to federal habeas relief); *Pinkney v. Senkowski,* No. 03-CV-4820 (LTS), 2006 WL 3208595, at *6 (S.D.N.Y. Nov. 3, 2006) (the inadvertent omission of the juror's oath does not involve a constitutional or federal violation). Petitioner has provided no reason to believe that any of the prospective jurors answered questions untruthfully or that the failure to administer the oath was anything other than inadvertent. Therefore, no federal question for *habeas* review is presented even assuming a lack of compliance with state procedural provisions.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied. Mack is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.,* 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where

petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citation omitted). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 28, 2018
      Brooklyn, New York